NOT FOR PUBLICATION                                [Docket No. 14]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|   |   |
|---|---|
| IRA CLAYTON,<br><br>          Plaintiff,<br><br>     v.<br><br>T. CLEMENT, CHARLES MCLAUGHLIN, G. HARES, R. SHEARBURN, E. ADAMS, L. VEACH, SR., K. HARTEM, SCO. VASTANO, LT. ROBERTS,<br><br>          Defendants. | Civil No. 06-5426 (RMB)<br><br>**OPINION** |

APPEARANCES:

Ira Clayton
Prison #419896
SBI #933362B
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625
          Pro Se Plaintiff

Susan Marie Scott, Deputy Attorney General
Office of the NJ Attorney General
RJ Hughes Justice Complex
P.O. Bos 112
Trenton, NJ 08625
          Attorneys for Defendants

**BUMB**, United States District Judge:

**INTRODUCTION**

     This matter comes before the Court on a motion to dismiss

the complaint for failure to state a claim or, alternatively, for

summary judgment, brought by Defendants.  Plaintiff, Ira Clayton, an inmate at the New Jersey State Prison, filed a § 1983 complaint alleging that while he was incarcerated at Bayside State Prison ("Bayside"), Defendants, Corrections Officers at Bayside, assaulted him using excessive force.  Defendants now seek to dismiss this claim based on the following arguments: 1) claims against Defendants in their official capacity are barred by the Eleventh Amendment; 2)claims against Defendants in their individual capacity should be dismissed because Defendants used no more force than necessary in the situation; 3) Defendants are entitled to qualified immunity; and 4) punitive damages are improper because there is no evidence that Defendants acted with the requisite "evil motive" or "callous indifference".  To date, Plaintiff has not filed anything in response to Defendants' motion.

**FACTS**

Plaintiff is a prisoner currently incarcerated in New Jersey State Prison in Trenton, New Jersey.  At the time of the incident discussed in the Complaint, Plaintiff was incarcerated at Bayside State Prison.  The facts most relevant to this motion are found in a videotape of the incident in question, which Defendants submitted as Exhibit A to the Declaration of Matthew Clark ("Clark Decl.") in support of their motion.  Although given ample

opportunity to do so, Plaintiff has failed to offer any evidence to dispute the videotape. Thus, for the part of the incident captured on video, the facts are described as they are shown on the videotape. However, with regard to the events that occurred prior to the time videotaping began, there is some dispute and the Court therefore summarizes each party's version of the facts.

Plaintiff alleges that on April 12, 2006, he was unhappy with his situation at Bayside and wanted to obtain a transfer to another prison. At approximately 9:10 a.m., Plaintiff asked Officer Merriman to "call the Sgt. and say that [he] threatened her so that [he] could leave Bayside and she agreed to [his] request." (Compl. at 7). The officers who came to his cell in response to the call, Officers Clement, Hares, and Vastano, were, in Plaintiff's words, "unaware that Officer Merriman and [Plaintiff] planned the fictitious threat, so they responded in a hostile and physical manner." (Id. at 8). Plaintiff alleges that the Defendant officers then took him to the "West Arcade" area, where they "mushed [him] in the face" and "propelled [his] head into a wooden coat rack." (Id.). The assault continued, Plaintiff claims, with Defendants "kicking [him], kneeing [him] in [his] stomach, ribs, knees, shoulders and spitting tobacco in [his] face." (Id.). Plaintiff alleges he was then "thrown face-down and hand-cuffed from behind and taken to the Medical Unit to be evaluated." (Id.). From there, he was taken to lock-up and

3

told to remove his clothing for a search. (Id.). When he refused, Plaintiff alleges he was "spat upon and called nigger, so [he] put [his] mattress against the entrance to deflect the precipitation of bodily fluids upon [him]." (Id.). The videotape tells the rest of the story.

Defendants' version of the events leading up to the videotape is very different. According to their account of April 12, 2006, Officer Merriman was not aware of Plaintiff's "fictitious threat," and upon observing Plaintiff's "threatening behavior," called for backup. (Def. SOF at ¶¶ 3-6). Defendant Clements and other officers arrived and Plaintiff was charged with a disciplinary infraction, handcuffed and escorted to the infirmary to be medically cleared for placement in pre-hearing detention pending the outcome of disciplinary charge. (Id. at ¶¶ 5-7). During both the escort to the infirmary and the medical examination, Plaintiff was hostile and uncooperative and made verbal threats to the officers and the nurse. (Id. at ¶¶ 8-10). Although the medical evaluation ended short due to Plaintiff's hostility, the nurse noted that Plaintiff's "speech is clear and gait is steady and no obvious markks [sic] seen." (Id. at ¶¶ 11-12; Smith Decl., Ex. C at EMR7). Plaintiff was then placed into an infirmary segregation cell, where the handcuffs were removed, and ordered to remove his clothing for a search. (Def. SOF at ¶¶ 13-15). Plaintiff refused to comply with this order and

4

continued threatening the officers, at which point Investigator Matthew Clark and an extraction team, along with a video camera, were called to the scene to enter the cell and remove Plaintiff's clothes. (Id. at ¶¶ 16-17). From that point on, the events were recorded on video and, thus, the remaining facts are summarized according to what is actually shown on the video.

The beginning of the video shows Plaintiff refusing to comply with Defendants' orders to come out of his cell and barricading his door with the mattress from his bunk area. (Clark Decl., Ex. A). After several minutes of unsuccessfully ordering Plaintiff out of his cell, Defendants sprayed Plaintiff with pepper spray, as a temporary means of incapacitating him, to force him to cooperate. (Id.). They then opened the cell door, took Plaintiff to the shower area of the infirmary to wash off the spray (so as not to burn him), and put him in the violent prisoner restraint chair. (Id.). During this time, Plaintiff was given a blanket, provided more water on several occasions to sooth his face and skin, and placed into a cell in the hospital segregation area, where he remained for several hours.[1] (Id.). At that point, Investigator Clark stopped filming but filmed each and every time the cell door was opened. (Def. SOF at ¶ 49).

---

[1] Plaintiff remained in the restraining chair for approximately 4.5 hours, after which time he was released to use the bathroom and then locked in the cell free of restraints. (Id. at ¶¶ 62-63).

5

The video shows that shortly after being placed in the cell, Plaintiff was examined by the prison nurse, who reported that Plaintiff had "no abrasion, irritation or injury..." (Clark Decl., Ex. A; Smith Decl., Ex. C at EMR12). (Id.). Plaintiff was medically examined or checked on by prison medical staff nearly one dozen times in the next four hours. (Clark Decl., Ex. A; Def. SOF ¶¶ 50-68). Plaintiff was treated for minor cuts and bruises, and during one examination, the doctor noted that Plaintiff had some tenderness and contusions in his right rib area and right knee. (Smith Decl., Ex. C at EMR41). No significant injuries were noted. Shortly before 5:00 P.M., Plaintiff was taken from the cell to the transport vehicle for transfer to Southwoods State Prison. (Def. SOF ¶¶ 69).

**STANDARD OF REVIEW**

Defendants have moved to dismiss the Complaint in accordance with Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment in accordance with Fed. R. Civ. P. 56(c). A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied if the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted). Further, "[w]hile a complaint attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ...a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted).

In their moving papers, Defendants alternatively seek summary judgment and attach documentation and affidavits in support of that request.  Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "At the summary judgment stage the judge's function is not...to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  "In making this determination, a court must make all reasonable inferences in favor of the non-movant." Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D. N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of the...pleading'; its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that

there is a genuine issue for trial.'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When a court considers matters outside the pleadings, it should convert the motion to a motion for summary judgment to provide the opposing party an opportunity to respond. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). Upon the conversion of a 12(b)(6) motion to one for summary judgment, "all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). A court must give the parties notice of its intent to convert a defendant's motion to dismiss into a motion for summary judgment so that the plaintiff is not subjected to "summary judgment by ambush." Jones v. Morris County Corr. Facility, 2007 U.S. Dist. LEXIS 27556, *7 (D.N.J. 2007) (quoting In re Bayside Prison Litig., 190 F. Supp. 2d 755, 760 (D.N.J. 2002)).

In the instant case, this Court issued an Order on November 5, 2007, explicitly giving Plaintiff notice that the Court would convert Defendants' motion to one for summary judgment.[2] Order

---

[2] Moreover, the Order explicitly granted Plaintiff "another 10 days from [the date of the Order] to file such response [to Defendants' motion for summary judgment] and any evidence in support thereof." Order dated November 5, 2007 (Docket No. 30).

dated November 5, 2007 (Docket No. 30); see also Clay v. Dept. of the Army, No. 06-2515, 2007 U.S. Dist. LEXIS 9541 (3d Cir. Apr. 26, 2007) ("if there is no hearing, it is undesirable for a district court to enter summary judgment unless in its order 'it is made clear beyond doubt that the parties must present their affidavits and counter-affidavits in addition to whatever facts appear in the pleadings, depositions, answers to interrogatories, and admissions on file'") (quoting Rose v. Bartle, 871 F.2d 331, 341 (3d Cir. 1989)).  Thus, the Court now considers Defendants' motion as one for summary judgment.

While Plaintiff has failed to oppose Defendants' motion, the Third Circuit has cautioned against granting such motions as unopposed without an analysis of the merits.  See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) ("this action should not have been dismissed solely on the basis of the local rule without any analysis of whether the complaint failed to state a claim upon which relief can be granted, as provided in Fed. R. Civ. P. 12(b)(6)").  Therefore, this Court will address Plaintiff's claims, keeping in mind that "however inartfully pleaded," the "allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); see also Thompson v. Oscar Aviles, 2007 WL 128898 at *1 (D.N.J. January 11, 2007) ("When a complaint is filed pro se, the Court will liberally construe the pleadings and

9

will apply the applicable law, 'irrespective of whether the <u>pro se</u> litigant has mentioned it by name'") (<u>quoting</u> <u>Higgins v. Beyer</u>, 293 F.3d 683, 688 (3d Cir. 2002)) (internal citations omitted).

## DISCUSSION

### A)   Official Capacity

As an initial matter, the Defendants have moved to dismiss Plaintiff's claims to the extent they are asserted against Defendants in their official capacities because such actions are barred by the Eleventh Amendment.

The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. <u>See e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974).

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type

of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) of Title 28 United States Code require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."  In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of Section 1983.  Will v. Michigan Dept. Of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989).

Thus, Plaintiff's claims against Defendants in their official capacities are dismissed.

### B) Individual Capacity

The Court now considers Plaintiff's claims to the extent they are asserted against Defendants in their individual capacities.  Plaintiff has brought claims pursuant to 42 U.S.C. § 1983, alleging that he was subjected to cruel and unusual punishment in violation of his rights under the Eighth and

11

Fourteenth Amendments. To state a claim for relief under § 1983, a plaintiff must show the violation of a right secured by the Constitution or laws of the United States and that the deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

As a prisoner, Plaintiff's only recourse is through the Eighth Amendment, as claims for cruel and unusual punishment are only brought pursuant to the Fourteenth Amendment for pre-trial detainees. Hubbard v. Taylor, 399 F.3d 150, 158 n. 13 (3d Cir. 2005). Thus, the Court must consider whether Defendants' actions violated Plaintiff's Eighth Amendment rights. Although Plaintiff does not specifically use the words "excessive force" in his complaint, his allegations of assault amount to a claim based on excessive force.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be 'cruel and unusual.'" Rhodes v. Chapman, 452 U.S. 337, 345 (1981). The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Id. at 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)). To state a claim under the Eighth Amendment, an inmate

must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345. What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Hudson, 503 U.S. at 6 (quoting Whitley). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9. In such cases, a prisoner may prevail

13

on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used. Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321). Thus, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Hudson, 503 U.S. at 9-10.

### 1) Pre-Video Events

According to his complaint, Plaintiff alleges that the assault by Defendants began prior to the time the videotaping started, when Defendants allegedly kicked him, kneed him, spit tobacco in his face, and insulted him with racial slurs. (Compl. at 8). However, Plaintiff offers nothing in support of his

14

allegations.  By contrast, in support of their account, Defendants have submitted affidavits with exhibits that describe the events that occurred prior to the videotaping.  (Baals Decl.; Clark Decl.; Smith Decl.).  Besides directly contradicting Plaintiff's version of the events, these affidavits attach medical records that show Plaintiff did not suffer any significant injuries that would result from the kind of assault Plaintiff alleges occurred.  (See, e.g., Smith Decl., Ex. C at EMR12).

To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-67.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana, 260 F.3d at 232.  Plaintiff has failed to support his allegations with any proof whatsoever.

    **2)   Events on Video**

The Court turns now to the part of the incident that was captured on videotape.  Plaintiff alleges in his complaint that during this part, Defendants assaulted him, "using [his] body as a battering-ram as they carried and slammed it into things along the way...forc[ing] [him] head-first into a bucket with water and trash in it."  (Compl. at 9).  Plaintiff further claims that after Defendants "kneed and punched [him] all over [his] body,"

he "was then urinated upon, hosed him down with water, then forced him into a restraint chair and placed in a rubber room." (Id.).

However, despite Plaintiff's rendition of the facts, the video shows another story entirely. The events captured on video do not show an assault, but rather Defendants' response to an uncooperative and unruly prisoner. When Plaintiff refused to come out of his cell and barricaded his door with his mattress, Defendants used pepper spray, a temporary means of incapacitating him, to force him to cooperate. They immediately showered him off so the spray would not burn him and strapped him to a chair to restrain him. Plaintiff was given a blanket and examined by the prison medical staff to ensure he was not injured. Within two hours, Plaintiff was released from the chair and transferred to Southwoods State Prison.

Based on the video, there is no evidence that Defendants "maliciously and sadistically" used force to harm Plaintiff, as required by the standard. Rather, the video shows that Defendants, in response to Plaintiff's antics, used appropriate force in a good faith effort to restore discipline. Nothing on the tape indicates excessive force and Plaintiff has offered nothing to support his side of the story. As the Supreme Court recently held, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

16

adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S. Ct. 1769, 1776 (April 30, 2007). Here, Plaintiff's version of what happened "is so utterly discredited by the record that no reasonable jury could have believed him." Id. This Court cannot rely "on such visible fiction" and must "view[] the facts in the light depicted by the videotape." Id. The video record directly refutes Plaintiff's allegations of assault and Plaintiff has not (and likely cannot) offer anything to rebut it.

Given the Defendants' evidence in support of their account and Plaintiff's failure to offer anything to dispute that account, this Court can find no genuine issue of fact warranting trial. Simply put, the record is insufficient to support Plaintiff's allegations that Defendants used excessive force against Plaintiff. Defendants are therefore granted summary judgment on Plaintiff's Eighth Amendment claim.

### C) Qualified Immunity & Punitive Damages

In light of the Court's determination of the excessive force issue, the Court need not delve into the analyses of qualified immunity or punitive damages.

**CONCLUSION**

For the aforementioned reasons, this Court holds that Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment. Concerning the claims against Defendants in their individual capacities, the Court holds that the record is insufficient to show that Defendants used excessive force against Plaintiff and, thus, Plaintiff's § 1983 claim fails. Defendants are entitled to summary judgment on all claims. An appropriate Order will issue this date.

Dated:  November 30, 2007        s/Renée Marie Bumb
                                 RENÉE MARIE BUMB
                                 UNITED STATES DISTRICT JUDGE